MESRITZ (CHUCK v.). See Case No. 2,710.

MESSENA v. The A. B. NEILSON. See Case No. 9,493a.

## Case No. 9,493a.

### MESSENA et al. v. The NEILSON.

[24 Betts, D. C. MS. 13.]

District Court, S. D. New York. Jan. Term, 1858.

COLLISION—DEFENSES—TITLE—CONTRIBUTORY NEGLIGENCE—LIGHTS.

[1. The fact that a pilot vessel is cruising off her station is no defense to a libel against another pilot vessel for a collision.]

[2. The fact that the owners of a vessel in possession have placed the title temporarily in another, to secure moneys borrowed to pay her purchase price, will not prevent their maintaining a libel for collision.]

[3. Libellant in a collision case must show freedom from contributory negligence.]

[4. There can be no recovery for the loss of a pilot boat in a collision where she was lying to in a thick cloud at night, without any light exhibited on deck, so as to afford a warning to approaching vessels, and with only a small boy on deck, where the colliding vessel was properly manned, and did not see the other until too late to avoid the collision.]

The pilot schooner Julia was built by Messrs. Grinnell & Woolsey, of this city, and enrolled and licensed in their name September 5, 1854. She was built under an arrangement with the libellants [Edward D. Messena and others] that they were to become purchasers and owners of her on payment of the costs and charges of her building. April 29, 1856, Grinnell & Woolsey licensed the vessel to the libellants; and on the 4th of March, 1857, Grinnell assigned her to his co-owner, Woolsey, and the libellants, as also all claims and demands against the pilot boat A. Bleeker Neilson and owners, and all persons concerned in producing the collision in question in this action. To fulfill the contract of purchase, the libellants, through Mr. Blunt, obtained from an insurance company a loan of money to pay the purchase price of the vessel under an arrangement that the ownership should be vested in G. W. Blunt for the security of that loan. Mr. Blunt accordingly took the legal title in his own name, for the security of that loan, with the privilege reserved to the libellants to pay off the debt by installments out of their earnings as pilots in

the employment of the boat. When the debt was satisfied, the vessel was to become the property of the libellants, as co-owners, in the proportion they should have respectively paid towards the extinguishment of the debt. The loan has not yet been fully satisfied, and the title of the boat still remains in the name of Blunt at his disposal for satisfaction of that debt.

On the 19th of October, 1856, the pilot boat, under the command and in the employment of the libellants, was allotted to keep station near the Hook, in conformity to the by-laws of the board of commissioners of pilots; and in violation of their duty in that respect, she was that evening removed from that station seven or eight miles, and employed in cruising for vessels outside the Hook, and between eight and nine o'clock in the evening she encountered the collision which is the subject of this action. The Julia was lying to, under headway of about 1¼ knots the hour, heading S. S. W., the wind W. S. W., and moderate. It was a dark starlight night, but a thick cloud or bank lay in the S. E., towards which the two vessels were steering. The Julia had two hands in charge of the deck, the rest of the crew having their watch below; one of these assigned to her charge was a lad of 17 years old, and the other, an able seaman. The boy had charge of the helm, and the other was below, when the schooner A. B. Neilson was discovered from the Julia approaching on her starboard side, from the north, the two vessels then being 3 or 4 miles southerly of the station ship, and running pretty much in the same direction. No light was on the Julia except a small hand-lamp, standing in the binnacle, and there was no lookout on deck. The man below was hailed by the boy, and told that a vessel was approaching; he answered the hail, but not coming on deck, the boy shortly after caught the binnacle lamp, and ran forward, calling again earnestly that a vessel was coming right at her, when the man came out, took the lamp from the boy, and held it out over the railing, as a warning towards the Neilson. The light was then first seen on the Neilson, but she was too near the Julia to be able to avoid her. The Neilson was well manned, with a competent lookout upon deck, stationed about midships, and as far forward as is usual in small vessels, and as far as could be and keep out of the spray thrown over her bows, and he was moving backwards and forwards, and across the deck, looking out attentively in all directions. She also had a lantern lighted, and in good order, suspended in the shrouds, 10 or 12 feet above the deck. The Julia was not seen from her until the binnacle lamp was held out as a warning, and when the two vessels were nearly in contact, and too late for anything to be successfully done on board either to avoid the collision. The Julia was struck on her starboard side, and shortly after went down, and became a total loss.

BETTS, District Judge. I shall lay out of view in this case the fact that the Julia was off her station at the time of the collision, as affording any excuse for a trespass committed upon her. This was no malfeasance which the claimant could set up as a bar to his liability for his own illegal conduct. The libellants may have been liable to fine or disability, because of disobedience to the regulations of the service in which they were subordinate, but such delinquency would not outlaw them in respect to the fullest protection and remedy in this suit, if wronged in their persons or property, by the unjustifiable acts of the claimant or his agents. Their act was not a fault in itself conducing to the collision, and thereby also inflicting an injury upon the claimant, because the Neilson had no reason for guarding herself specifically against the Julia, or to suppose she was near the station ship or in any other particular position. Her being found in this place, therefore, could in no way mislead the colliding vessel in the choice of her own course, or in the manner in which she pursued it.

Nor shall I regard the question of title to the Julia, or the competency of the libellants to maintain this action upon the footing of the provisional interest accruing to them in the vessel under the arrangement for her purchase, whether set up as a legal or equitable ownership, or a right to an exclusive possession and use of the vessel. Mr. Blunt's testimony proves that he considers himself the trustee of the Insurance Co. creditor, and to be to the libellants no more than a pipe of conveyance, by which the title is to be transmitted to the libellants, when the debt owed the company is extinguished. To that period he regards himself the trustee of that creditor; and if the debt is not paid, he supposes the boat is to be devoted by him to that end. The libellants do not produce proof of the paper title to the boat, from Grinnell to them, although they offer in evidence papers prepared and partially executed for that purpose. Passing by those collateral points, I shall look only at the merits of the case involved in the charge of culpability of the Neilson, and the right of the Julia to damages incurred in the transaction which occasioned the loss, assuming that the libellant had a possessory interest in her at the time, which was destroyed or injured by the collision.

A cardinal principle lying at the bottom of actions for collision at sea is that the party setting up an offence or tort, to have been committed to his damage by another, must show himself clear of any misfeasance or remissness conducing to or promoting the injury. He grounds himself in his plaint essentially on the assumption that every thing incumbent on him by law to do in respect to the preparation and management of his vessel on the occasion was duly performed, and in a cautious and skillful manner, and these matters must be clearly proved by him. Abb.

Shipp. 306; Story, Bailm. § 609. And if that was not so. he could stand only upon his common-law remedies, under which he is debarred all remuneration in his losses, when what he suffers is attributable wholly to the want of proper diligence or precaution on his part. As the complaining party, he must supply preponderating proof that the injury he sustained proceeded from negligence or the want of skill in the management of the vessel he proceeds against, and charges with causing him the loss he has sustained. The Catherine of Dover, 2 Hagg. Adm. 145; The William Young [Case No. 17,760]; The Relief [Id. 11,693]. The position of the Neilson to the rear and windward of the Julia imposed upon the former the duty of keeping clear of the latter in passing her. The Governor [Id. 5,645]. But she is relieved of blame in failing to do so, if, from causes not under her own control, but, on the contrary, created or promoted by the Julia, she was prevented discovering her until too late to escape her. Peck v. Sanderson, 17 How. [58 U. S.] 178. It appears to me the evidence on the part of the libellants themselves clearly casts the blame upon them in this respect. If not actually lying to at the time, the Julia was enveloped in a thick cloud in almost a motionless state. She was discernible only a few yards distance from a vessel proceeding from northerly towards the east, and there being no more than a small binnacle light in use, and that not exhibited on deck in a way calculated to afford warning to vessels nearing her, and with only one small boy on deck to manage the vessel and keep a lookout. Each of these particulars are evidence of culpable negligence on the part of the libellants, and would excuse the Neilson from responsibility for the consequences of the collision, especially upon the clear and positive testimony given by the claimants, that the Julia was not in fact discovered from the Neilson until too late for her to take any effectual measures to escape a collision.

The case before cited—[Peck v. Sanderson] 17 How. [58 U. S.] 178—declares the rule to be that the omission of a vessel injured by a collision to supply proper notice of her position to another known to be in a dangerous proximity to her relieves the colliding vessel from liability for the injury done in consequence. The fact implied by the court in that case is distinctly proved in this by the libellants' testimony that the helmsman on the Julia saw the light of the Neilson approaching and bearing directly upon the former, before he called the watch from below, and in time to allow a second call and several minutes to intervene, before he came on deck, and any warning light was shown to the Neilson, and which was the first notice to her that the Julia was in the way. These acts of neglect and culpable mismanagement on board the Julia are sufficient to bar all right of recovery in this case; but, independent of the faults of which the libellants were guilty, it is, in my judg-

ment, satisfactorily proved that the Neilson was properly manned and conducted, and the rate of six or eight knots the hour at which she was running was not unsafe or imprudent at the time. It is further to be remarked that although the excusatory evidence offered by the libellants for the neglect and irregularity in the management of the Julia comes in part from the libellants themselves, and therefore, if admissible at all, must be received with distrust and great allowance, yet the testimony given by witnesses indifferent to the parties and the controversy is overpowering to prove a plain and culpable neglect and want of precaution in failing to signalize the Neilson in some proper way, and apprize the latter of her position, after the boy at her helm became aware the other was nearing her in her position, and whilst there remained ample time to give such warning as would have placed it in the power of the Neilson to protect both from harm. It was not necessary that the Neilson. to exonerate herself from responsibility for this injury, should show she exercised the highest possible diligence and precaution to avoid it. That might require her to come to absolutely and suspend all movements during the night; it is sufficient for her to exercise the usual and ordinary precaution of vessels under way, and with that restriction she was entitled to continue her voyage notwithstanding possible circumstances might intervene rendering her navigation dangerous to other vessels. Stuart v. Foster, 1 How. [42 U. S.] 93. The testimony of disinterested witnesses satisfactorily proves the speed of the Neilson at the time to have been no greater than was prudent as she was manned and managed, not exceeding 6 to 8 miles the hour, and the boy on the Julia proves he saw her light distinctly a mile or more off. Under the facts in evidence, I hold, therefore, that the fault of the collision lies primarily with the Julia, and that the libellants cannot therefore sustain this action to charge the consequences of it upon the Neilson.

Libel dismissed, with costs to be taxed.